UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WOJCIECH RUSEK,                          :
        Plaintiff,                       :
                                         :
        v.                               :      CA 06-38 ML
                                         :
MICHAEL J. ASTRUE,[1]                    :
Commissioner,                            :
Social Security Administration,          :
        Defendant.                       :


## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

    This matter is before the Court on the request of Plaintiff
Wojciech Rusek ("Plaintiff") for judicial review of the decision
of the Commissioner of Social Security ("the Commissioner"),
denying Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the
Social Security Act, as amended, 42 U.S.C. §§ 405(g) and
1383(c)(3) ("the Act").  Plaintiff has filed a motion to reverse
the Commissioner's decision or, alternatively, remand the matter
to the Commissioner.  Defendant Michael J. Astrue ("Defendant")
has filed a motion for an order affirming the decision of the
Commissioner.

    The matter has been referred to this Magistrate Judge for
preliminary review, findings, and recommended disposition.  See

---

    [1] Pursuant to Fed. R. Civ. P. 25(d), Commissioner Michael J.
Astrue has been substituted for Jo Anne B. Barnhart as Defendant in
this action.  See Fed. R. Civ. P. 25(d) (2008) ("An action does not
abate when a public officer who is a party in an official cpacity
dies, resigns, or otherwise ceases to hold office while the action is
pending.  The officer's successor is automatically substituted as a
party.  Later proceedings should be in the substituted party's name
...."); see also 42 U.S.C. § 405(g) ("Any action instituted in
accordance with this subsection shall survive notwithstanding any
change in the person occupying the office of Commissioner of Social
Security or any vacancy in such office.").

28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct.  Accordingly, based on the following analysis, I recommend that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #8) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Doc. #5) ("Motion to Reverse or Remand") be denied.

### Facts and Travel

On February 17, 2004, Plaintiff protectively filed applications for DIB and SSI, alleging disability since June 1, 2001, due to a back injury.  (R. at 12, 68-70, 85)  The applications were denied initially and on reconsideration, (R. at 12, 43, 45, 47-49, 51-53, 229, 230-32, 234, 235-37), and a timely request for a hearing by an administrative law judge ("ALJ") was filed, (R. at 12, 54).  Plaintiff appeared *pro se* and testified at a hearing on September 6, 2005.  (R. at 12, 21-36, 41)  A vocational expert ("VE") also testified.  (R. at 12, 36-40)  In a decision dated October 7, 2005, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, therefore, not entitled to a period of DIB or SSI.  (R. at 12-20)  Plaintiff requested review by the Appeals Council, (R. at 8), which on December 1, 2005, denied his request, (R. at 5-7), thereby rendering the ALJ's opinion the final decision of the Commissioner, (R. at 5).  Thereafter, Plaintiff filed this action for judicial review.

### Issue

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

### Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed de novo, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

### Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

[3] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through December 31, 2006. (R. at 12)

application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. §§ 404.1521(a), 416.921(a) (2008).[5]  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2007).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

[5] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and Supplemental Security Income "SSI").  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite only to one set of regulations.  See id.

See <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 20-21
(1st Cir. 1986); 20 C.F.R. § 404.1528(a) (2008)("Your statements
alone are not enough to establish that there is a physical or
mental impairment.").

The Social Security regulations prescribe a five-step
inquiry for use in determining whether a claimant is disabled.
<u>See</u> 20 C.F.R. § 404.1520(a) (2008); <u>see also</u> <u>Bowen v. Yuckert</u>,
482 U.S. 137, 140-42 (1987); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5
(1st Cir. 2001).  Pursuant to that scheme, the Commissioner must
determine sequentially: (1) whether the claimant is presently
engaged in substantial gainful work activity; (2) whether he has
a severe impairment; (3) whether his impairment meets or equals
one of the Commissioner's listed impairments; (4) whether he is
able to perform his past relevant work; and (5) whether he
remains capable of performing any work within the economy.  <u>See</u>
20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at
any step.  <u>See</u> <u>Seavey</u>, 276 F.3d at 4.  "The applicant has the
burden of production and proof at the first four steps of the
process.  If the applicant has met his or her burden at the first
four steps, the Commissioner then has the burden at Step 5 of
coming forward with evidence of specific jobs in the national
economy that the applicant can still perform."  <u>Freeman v.</u>
<u>Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since June 1, 2001, the
alleged onset of his disability, (R. at 15); that Plaintiff's
degenerative changes of the lumbar spine constituted a severe
impairment, (<u>id.</u>); that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled a listed
impairment,(<u>id.</u>); that Plaintiff retained the residual functional

capacity ("RFC") for a wide range of light work, with no repetitive climbing, stooping, crouching, or crawling, no concentrated exposure to extremes of temperature or wetness, and no working at unprotected heights or around dangerous machinery, (id.); that Plaintiff's statements regarding his impairments and their impact on his ability to work were not fully credible, (R. at 16); that Plaintiff was unable to perform any of his past relevant work, (R. at 18); and that, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy which Plaintiff was capable of performing,[6] (id.); and that, therefore, Plaintiff had not been under a disability, as defined in the Act, at any time from June 1, 2001, through the date of the ALJ's decision, (R. at 19).

## Errors Claimed

Plaintiff alleges that: (1) the ALJ failed to obtain a valid waiver of the right to counsel, Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing

---

[6] The ALJ's step five finding actually reads: "Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant number in the national economy that the claimant can perform."  (R. at 18)(internal citations and bold omitted).  However, it is clear from the context and the remainder of the decision that the ALJ intended to say that there were jobs that existed in significant number in the national economy that Plaintiff could perform and that the inclusion of the word "no" above was a typographical error.  See, e.g., (R. at 19)("The Administrative Law Judge ... finds that based on the residual functional capacity for a wide range of light unskilled work, there exists other work in significant numbers throughout the regional and national economy which the claimant is capable of performing.") (internal citation omitted); (id.)("Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of 'not disabled' is therefore appropriate ....").

or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 6; 2) the ALJ's evaluation of Plaintiff's MRI is factually erroneous, id. at 14; 3) the ALJ failed to mention or evaluate Plaintiff's headache condition to determine whether it represented a severe impairment, id. at 16; 4) the ALJ failed to ask the vocational expert ("VE") whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT") as required by Social Security Ruling ("SSR") 00-4p, id. at 17-18; and 5) the ALJ's failure to provide Plaintiff with an interpreter was legal error, Plaintiff's Response to Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Plaintiff's Response") at 3.

## Discussion

### I.   Waiver of Right to Counsel

#### A.   Validity of Waiver

Plaintiff argues that the ALJ failed to obtain a valid waiver of his right to counsel.  Plaintiff's Mem. at 6. Specifically, Plaintiff asserts that, in order to insure a valid waiver, the ALJ was required to explain to Plaintiff: "1) the manner in which an attorney can aid the proceedings; 2) the possibility of free counsel; and 3) the limitation of attorney's fees to 25 percent of past due benefits and required court approval of the fees."  Id. at 7 (quoting Moore v. Apfel, 60 Soc. Sec. Rep. Serv. 759, 1999 WL 261927, at *1 (N.D. Ill. Apr. 26, 1999)(quoting Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1997))).

> Claimants for Social Security disability benefits have a statutory right to counsel at hearings.  However, the right to counsel "falls well below the Sixth Amendment threshhold" applicable in criminal cases.  As part of the right to counsel, claimants should be appropriately notified of that right.  Claimants may, following sufficient notification of the right to counsel, waive

the right by intelligently deciding to proceed *pro se.*
Mandiej v. Chater, 944 F.Supp. 121, 130 (D.N.H. 1996)(quoting,
*inter alia*, Evangelista v. Sec'y of Health & Human Servs., 826
F.2d 136, 142 (1st Cir. 1987))(internal citations omitted).
Significantly, the Court of Appeals for the First Circuit has
held that "it is clear that the absence of counsel, without more,
creates no basis for remand.  There must be something extra.
Thus, remand for want of representation is necessitated only
where there is a showing of unfairness, prejudice or procedural
hurdles insurmountable by laymen." Evangelista, 826 F.2d at 142
(internal quotation marks and citations omitted).

In Steward v. Barnhart, 222 F.Supp.2d 60 (D. Me. 2002), the
plaintiff similarly argued that the ALJ was required to follow
the Seventh Circuit standard cited by Plaintiff above, id. at 62-
63.  The court rejected that argument, stating that "[t]he First
Circuit has not adopted this gloss on the statutory language and
appears to apply a less rigorous review." Id. at 63 (citing
Evangelista, 826 F.2d at 142-43 & n.5).  The Steward court noted
that, in addition to a knowing waiver, "[t]he First Circuit
requires proof of prejudice or unfairness attributable to self-
representation in order to warrant remand." Id. (citing
Evangelista, 826 F.2d at 143); see also Mandiej, 944 F.Supp. at
130 ("[A] flaw in the notice [of the right to representation]
does not automatically require that the case be remanded.
Rather, claimants must also show that they were prejudiced by
their lack of representation.").

The Court finds the reasoning of the Steward court
persuasive.  Accordingly, the Court rejects Plaintiff's
suggestion that the Court should adopt the Seventh Circuit's
approach, see Plaintiff's Mem. at 7 & n.1, and, instead, follows
the standard laid out by the First Circuit in Evangelista, 826
F.2d at 142, and followed by courts within the First Circuit, see

8

Steward, 222 F.Supp.2d at 63; Mandiej, 944 F.Supp. at 130.

It is clear that Plaintiff was "appropriately notified," Mandiej, 944 F.Supp. at 130, of his right to counsel. After his initial application was denied, (R. at 43, 47-49), he received a notice from the Social Security Administration ("SSA") which stated, in relevant part, that Plaintiff had the right to appeal the decision and that he could have a lawyer or other representative help him,[7] (R. at 48). On his Request for Reconsideration, Plaintiff signed and dated the statement on the form that "I understand I have a right to be represented at the reconsideration." (R. at 50) After his application was denied on reconsideration, (R. at 45, 51-53), Plaintiff received another notice from the SSA which notified him of his right to request a hearing before an ALJ and which contained the same language as the first notice,[8] (R. at 52). On his Request for Hearing by an Administrative Law Judge, Plaintiff again signed the acknowledgement that he had the right to be represented at the hearing. (R. at 54) Thereafter, Plaintiff received a letter from the SSA's Office of Hearings and Appeals which provided more

---

[7] The notice informed Plaintiff that:

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security Office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before s/he can collect it.

(R. at 48) Plaintiff indicated on his Disbility Report that he could read English. (R. at 85) In addition, Plaintiff noted on his Activities of Daily Living form that he spent "2 hours" reading newspapers. (R. at 95)

[8] See n.7.

detail regarding representation.[9]  (R. at 55-56)  Additionally, a
notice was attached to the letter which directed Plaintiff to
Rhode Island Legal Services if he was unable to pay for legal
representation and indicated that, if Plaintiff did not qualify
for free representation, Legal Services could refer him to a
private attorney.  (R. at 57)  The Notice of Hearing sent to
Plaintiff prior to the hearing before the ALJ again stated that
he could choose to have someone represent him.  (R. at 60)  Thus,
Plaintiff received no less than four written notices informing
him that he could be represented at the hearing, with
suggestions as to how to obtain such representation.  Twice he
signed forms acknowledging his right to representation.

At the outset of the hearing, Plaintiff was again told that
he had the right to have a representative present.  (R. at 23)
The following exchange occurred:

ALJ:      Now, when we notified you of this hearing, we

---

[9] The letter stated that:

You may choose to be represented by a lawyer or other person.
A representative can help you get evidence, prepare for the
hearing, and present your case at the hearing.  If you decide
to have a representative, you should find one immediately so
that he or she can start preparing your case.

Some private lawyers charge a fee only if you receive
benefits.  Some organizations may be able to represent you
free of charge.  Your representative may not charge or receive
any fee unless we approve it.

We have enclosed the leaflet "Social Security and Your Right
to Representation."  We are also enclosing a list of groups
that can help you find a representative.

If you get a representative, you or that person should call us
to give us his or her name, address and telephone number.  You
will also need to complete our Form SSA 1696-U4 Appointment of
Representative.  Any local Social Security office can give you
this form.

(R. at 55-56)

|        | advised you that you had the right to have somebody to represent you, either an attorney or a non-attorney.  Do you understand that? |
|--------|---|
| CLMT:  | Yes. |
| ALJ:   | And we also provided you some information about organizations that will be willing to represent you free of charge unless you are successful.  In other words, you don't pay unless you win your case.  Do you understand that? |
| CLMT:  | Yes. |
| ALJ:   | Is it your decision to proceed without any kind of representative? |
| CLMT:  | Yes. |

(R. at 23)

The Court concludes that Plaintiff knowingly and voluntarily waived his right to representation.  See Steward, 222 F.Supp.2d at 63; see also Ramirez v. Sec'y of Health, Educ. & Welfare, 528 F.2d 902, 903 (1st Cir. 1976) ("[W]hile appellant had a right to have retained counsel present at the hearing, the record clearly shows that she waived that right.  Informed of the right to counsel by letter (in Spanish) before the hearing, she responded in writing that she did not wish to be represented.  And asked at the hearing if she still wished to represent herself, she said that she did."); Rizan v. Sec'y of HHS, No. 94-275-SD, 1994 WL 759254, at *4 (D.N.H. Nov. 23, 1994)("[T]he record reveals that [the plaintiff] received written notice of his right to representation prior to his hearing.  [He] was again advised of that right by the ALJ at the commencement of the hearing.  The court finds, based on the record before it, that [the plaintiff] knowingly and intelligently waived his right to representation at his hearing before the ALJ.")(internal citations omitted); cf. Mandiej, 944 F.Supp. at 130 ("Here, plaintiff has failed to

demonstrate that his waiver of the right to be represented by counsel was any less than knowing and voluntary."). Thus, the ALJ did not err in accepting Plaintiff's waiver. <u>See</u> <u>Evangelista</u>, 826 F.2d at 142 ("There was no unfairness in acceding to his wish: a claimant, after all, has as much right to proceed *pro se* as he does to engage a lawyer.").

Regarding prejudice, Plaintiff argues that "although [he] could speak and understand some English, due to his language limitation he **may not have understood** the full implications of representation or his waiver of that right[,]" Plaintiff's Mem. at 8 (bold added), and that "the ALJ should have been on clear notice that she was dealing with a claimant who **may not have understood** the full measure of his rights, and/or, the full measure of assistance that an attorney could provide. For example, an attorney would fully develop the medical records, obtain opinion evidence from the treating physicians, and assist [Plaintiff] through the hearing process," <u>id.</u> at 10 (bold added). Plaintiff's argument strikes the Court as speculative. <u>See</u> <u>Steward</u>, 222 F.Supp.2d at 63 ("Here, the plaintiff speculates about what an attorney might have done at the hearing, but he does not make any showing that an attorney could and would have adduced specific evidence that might have altered the result.")(internal citation omitted). Such speculation is insufficient to show prejudice. <u>See</u> <u>Binion</u>, 13 F.3d at 246 ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.").

Although Plaintiff cites excerpts from the hearing transcript as evidence of Plaintiff's "language limitation," Plaintiff's Mem. at 8; <u>see also</u> <u>id.</u> at 9-10, a reading of the transcript illustrates that the ALJ worked with Plaintiff to ensure that he understood the questions and provided accurate

responses.  The following exchange exemplifies Plaintiff's ability to alert the ALJ when he did not understand a question and her concomitant ability to rephrase it so that he understood what she was asking:

Q    How often do you get a headache?

A    [INAUDIBLE]

Q    How often do you get a headache?

A    Don't understand this question.

Q    How often do you have pain in your head?

A    The most pain is right here.

Q    Okay.  In the back of the head?

A    Yes.

Q    How often do you get it?

A    How often, how often, I'm not understanding.

Q    Once a week, twice a week?

A    No, no.  That's everyday.

Q    Does the medication help?

A    Yes, little, but hurt.

Q    Okay.  I'm going to use a scale of zero to 10, zero is no pain, 10 is pain so bad you have to [go to] the Emergency Room.  After you take your medication, what is the level of your pain?

A    Between four, six.

Q    And how often do you take the medication during the day?

A    Sometime two times, sometime three times.

(R. at 28-29)

13

The Court is not persuaded that Plaintiff's "language limitation," Plaintiff's Mem. at 8, is indicative of unfairness to Plaintiff during the hearing.  The ALJ explained the procedure she would follow during the hearing and asked Plaintiff if he understood and if he had any questions about how the hearing would proceed.  (R. at 24)  She also inquired as to whether he objected to any of the exhibits being admitted into evidence. (R. at 25)  She questioned him at length regarding his pain, medication, limitations, living arrangements, and daily activities, rephrased her questions when necessary, and twice asked whether there was anything else Plaintiff wanted to tell her.  (R. at 25-36, 41); see also Rizan, 1994 WL 759254, at *4 ("[T]he record shows that the ALJ was careful to explain to [the plaintiff] how the hearing would proceed and to inquire as to whether [he] had any additional medical evidence.  The ALJ also questioned [him] about his medical problems and how those problems limit his daily activities.").

Although Plaintiff also states that "[b]ecause he was unrepresented, [he] asked no questions of [the VE]," Plaintiff's Mem. at 4, the Court rejects the implication that he was thereby prejudiced.  The ALJ asked the VE a hypothetical question with numerous variations, (R. at 37-41), and gave Plaintiff the opportunity to ask further questions of the VE, (R. at 41). After the VE concluded his testimony, the ALJ inquired as to whether there was anything else Plaintiff would "like to tell me about your case," (id.), to which Plaintiff responded "[n]o, I think you have, have the information," (id.).

In his reply memorandum, Plaintiff argues that the ALJ's determination that the opinion of Plaintiff's treating physician, Dr. Michael Klufas, was "not entitled to any special significance ...," Plaintiff's Response at 2 (quoting Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision

14

of the Commissioner ("Defendant's Mem.") at 22), "is a glaring example of the assistance an attorney could have provided for [Plaintiff]," id.

> Physicians are not taught how to write effective disability letters in medical school. Therefore, they quite frequently draft opinions that, to a layperson, appear to be airtight, but in reality are conclusive and encroach upon the ultimate issue. In such a situation, a representative can elucidate more useful information from a physician, helping the ALJ reach the right result by helping the physician to understand exactly what is in question. Similarly, physicians often do not have the time to connect all the dots that support their reasonable conclusions. A letter of support from a doctor can therefore often be totally devoid of any indications as to how the physician came to their [sic] conclusion. This is where an attorney could step in and do the legwork of documenting each symptom, laboratory sign, etc., leaving the physician's medical opinion untouched while allowing the ALJ to understand why an estimate as to an RFC [10] has been made.

Id. According to Plaintiff, "[t]he obvious conclusion is that Dr. Klufas' opinion would have been both clearer and more useful had [Plaintiff] been represented. Therefore, [Plaintiff] has easily met his burden of showing that his unrepresented status led to prejudice." Id. at 3.

The opinion to which Plaintiff refers is a brief note from Dr. Klufas, given to the ALJ at the hearing, (R. at 25), in which he opined that: "Patient is permanent[ly] disabled [secondary to] back pain. Please assist him in obtaining permanent disability," (R. at 220). Addressing this opinion, the ALJ stated that:

> On a prescription pad dated September 2, 2002, Dr. Klufas wrote the claimant was permanently disabled secondary to back pain. Ordinarily, controlling weight is given to a

---

[10] Although Plaintiff implies that Dr. Klufas' opinion contained "an estimate as to [Plaintiff's] RFC ...," Plaintiff's Response at 2, the note simply stated that Plaintiff was "permanent[ly] disabled," (R. at 220).

15

>treating physicians [sic] report commenting on the
>claimant's physical abilities. However, the undersigned
>Administrative Law Judge finds the statement conclusory
>and against the weight of the record as a whole.  The
>conclusion is not supported by medically acceptable
>signs, symptoms, and/or laboratory findings, and a review
>of the exhibit file ... fails to identify any subjective
>or objective medical findings supporting a conclusion
>which precludes the claimant from all forms of work.
>Moreover, special significance is never accorded to a
>treating physician's opinion regarding disability, as
>that is an issue specifically reserved to the
>Commissioner.

(R. at 17)(internal citations omitted); see also 20 C.F.R. §
404.1527(d) ("If we find that a treating source's opinion of the
issue(s) of the nature and severity of your impairment(s) is
well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in your case record, we will give it
controlling weight."); id. § 404.1527(e) (noting that opinions on
issues such as the ultimate issue of disability "are not medical
opinions ... but are, instead, opinions on issues reserved to the
Commissioner because they are administrative findings that are
dispositive of a case; i.e., that would direct the determination
of disability.").

The Court has reviewed the record and finds no error in the
ALJ's determination to accord little weight to Dr. Klufas'
September 2, 2002, opinion.  Whether the ALJ would have given
greater weight to a different opinion from Dr. Klufas is mere
speculation on Plaintiff's part.  Cf. Binion, 13 F.3d at 246.
Thus, the Court cannot conclude that this example demonstrates
that Plaintiff was prejudiced by lack of counsel.

The Court finds that Plaintiff's "lack of representation at
his hearing before the ALJ did not prejudice him or result in an
unfair hearing." Rizan, 1994 WL 759254, at *4; see also Ramirez,
528 F.2d 902, (1st Cir. 1976)("There is nothing to indicate that

16

appellant was in any way misled, or that her hearing was in any way unfair."). Accordingly, the Court proceeds to Plaintiff's next argument.

### B.   Duty to Develop Record

Relatedly, Plaintiff argues that, regardless of whether Plaintiff's waiver was valid or invalid, the ALJ had a heightened duty to develop the record because Plaintiff was unrepresented. See Plaintiff's Mem. at 10-14.  Plaintiff contends that the ALJ in the instant matter failed to carry out this duty to develop the record, see id. at 12, specifically her "affirmative duty to recontact Dr. Klufas to explain his findings," id. at 14.[11]

The First Circuit has stated that:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further.  Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that []he has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat

---

[11] Plaintiff argues that "there is no evidence anywhere in the ALJ's decision that she made any effort whatsoever to recontact Dr. Klufas or any other of [Plaintiff's] treating physicians." Plaintiff's Mem. at 13.  However, with the exception of Dr. Klufas, Plaintiff fails to indicate what additional evidence the ALJ should have obtained or that such additional evidence would have led to a different result.  See Amador v. Barnhart, Civil Action No. 05-11648-DPW, 2006 WL 1650977, at *5 (D. Mass. June 14, 2006)("Plaintiff fails to explain how the development of the record in this case left any evidentiary gaps resulting in unfairness or prejudice to his claim, or how additional evidence not obtained by the ALJ would have required an alternate conclusion."); see also Mandiej, 944 F.Supp. at 132 ("It is not enough to say that had [the ALJ] seen more information his decision would have been different.  It is probable that in all *pro se* cases additional material could have been generated by counsel.") (alteration in original).

filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)(quoting Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)); see also Mandiej, 944 F.Supp. at 130 (noting that reviewing court "must determine whether the [allegedly] incomplete record reveals evidentiary gaps which result in prejudice to the plaintiff" and that "[i]f the ALJ fails to fill those evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate")(internal quotation marks omitted); cf. Currier, 612 F.2d at 598 (noting that "we do not see such responsibilities arising in run of the mill cases").

The regulation on which Plaintiff relies states, in relevant part, that:

> (e) *Recontacting medical sources.*  When the evidence we receive from your treating physician or psychologist or other medical source **is inadequate for us to determine whether you are disabled**, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e) (2008) (bold added); see also SSR 96-5p, 1996 WL 374183, at *6 (S.S.A.)("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of

the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarifiation of the reasons for the opinion."). Plaintiff would apparently have the Court read the regulation as requiring that the ALJ must recontact the treating physician in every case where the ALJ declines to accept the treating physician's opinion. Such is not the case.

"As the Tenth Circuit has explained, 'it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ received from the claimant's treating physician that triggers the duty.'" Landry v. Astrue, Civil Action No. 06-30220-KPN, 2007 WL 4378161, at *5 (D. Mass. Dec. 7, 2007)(quoting White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001)(citation and internal quotation marks omitted)); see also Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *11 (D. Me. May 7, 2004)("As a threshold matter, these regulations impose a duty to recontact a treating physician only when the record is inadequate to make a determination of disability."). Here, there is no indication that the ALJ was uncertain about the basis for Dr. Klufas' opinion. The ALJ developed "an adequate record from which a reasonable conclusion [could] be drawn." Heggarty, 947 F.2d at 997 (quoting Carrillo Marin v. Sec'y of Health, Educ. & Welfare, 758 F.2d 14, 17 (1st Cir. 1985). That record included a twenty-eight page exhibit from Dr. Klufas consisting of office notes and test results, (R. at 155-82), in addition to the September 2, 2002, note in which he expressed his "findings," Plaintiff's Mem. at 14, that Plaintiff was "permanent[ly] disabled," (R. at 220). The ALJ considered this evidence, along with the other opinion evidence of record, as demonstrated by her summary of said evidence in her decision. (R. at 16-17) Thus, the Court concludes that there was no need for the ALJ to

recontact Dr. Klufas for "additional evidence or clarification
...." Plaintiff's Mem. at 14; see also Cooper v. Barnhart, No.
04-222-P-S, 2005 WL 1231496, at *4 (D. Me. May 24, 2005)("[T]he
record contained sufficient evidence to allow the administrative
law judge to make a determination regarding disability, so that
the rejection of [the doctor's] opinion ... did not trigger the
duty to recontact any physician.").

### C.    Summary

The Court finds that Plaintiff has not shown that he was
prejudiced by his waiver of his right to counsel.  See
Evangelista, 826 F.2d at 143 ("The claimant offers no proof
suggesting the sort of prejudice or unfairness attributable to
self-representation as would warrant remand."); Mandiej, 944
F.Supp. at 130 (noting that plaintiff had not "demonstrated any
actual prejudice stemming from his lack of legal
representation"); see also Evangelista, 826 F.2d at 143 ("The
mere fact that he was ultimately unable to persuade the ALJ to
see things his way does not, without more, make out a case for
prejudice ....  The point is not whether [the claimant] handled
the matter as well as his current counsel might have done;
rather, the point is that he was able to present his case
adequately ...."); Mandiej, 944 F.Supp. at 132 ("Ultimately, the
ALJ need not make out a pro se claimant's case.").  Accordingly,
the Court finds that remand is not warranted.  See Rizan, 1994 WL
759254, at *4.

## II.  Evaluation of Plaintiff's MRI

Plaintiff next challenges the ALJ's evaluation of
Plaintiff's September 2004 MRI as "[f]actually [e]rroneous."
Plaintiff's Mem. at 14.  According to the ALJ, the findings of an
open MRI performed on September 9, 2004, were "consistent with

the previous studies."[12]   (R. at 17)   Plaintiff argues that this statement is "palpably incorrect," Plaintiff's Mem. at 15, and asserts that the "September 2004 MRI proved that [Plaintiff] had suffered a worsening of his back condition at several levels of the lumbar spine," id.

It is true, as Plaintiff notes, see id., that the report of the September 9, 2004, MRI states that "[t]here is mild progression of the degenerative changes compared to the prior study."   (R. at 222); see also (R. at 221)("The desiccation appears progressed from the prior study."); (id.)(noting "mild central canal stenosis and bilateral foraminal narrowing which appears progressed from the prior study"); (id. at 221-22)("There is also new slight progression of the previously seen endplate degenerative changes.").   Thus, to the extent that the ALJ implied that the September 2004 MRI was entirely consistent with the previous MRI, she misspoke.

This error, however, is not so egregious as to require remand.   As noted above, the radiologist indicated just mild progression overall.[13]   (R. at 221-22)   The report reflects only slight progression of the endplate degenerative changes, (id.),

---

[12] Plaintiff had undergone an MRI on June 8, 2001.   (R. at 129) The report of that study indicated "[m]ild degenerative change of the lumbar spine with mild central stenosis as well as mild left sided foraminal stenosis at L4-5 and mild bilateral foraminal stenosis at L5-S1."   (Id.)

[13] In the report of the September 4, 2004, MRI the radiologist noted:

    1.    Degenerative disc disease from L3-4 to L5-S1 .... 
          There is mild progression of the degenerative changes 
          compared to the prior study.
    2.    Greatest degree of stenosis is seen at L4-5 with mild 
          central canal stenosis and moderate bilateral 
          foraminal narrowing.
    3.    Lower lumbar spine facet arthrosis.

(R. at 222)

mild facet arthrosis, (R. at 222), mild central canal stenosis at L4-5, (id.), and moderate bilateral foraminal narrowing, (id.). Moreover, as the ALJ noted, "[s]ince that study [the 2004 MRI] was performed, there are no documented follow up visits with any of the treating sources." (R. at 17)  The ALJ could reasonably infer that if Plaintiff's back had worsened to the degree he now argues, he would have seen his treating physicians.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[I]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner.")(quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 768 (1st Cir. 1991)("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.").

Accordingly, the Court finds that the ALJ's misstatement regarding the 2004 MRI is, at worst, harmless error.  Thus, I do not recommend remand on this issue.

## III. Evaluation of Plaintiff's Headaches

Plaintiff asserts that "[t]he ALJ failed to *mention*, much less *evaluate*[,] this condition in her decision," Plaintiff's Mem. at 16, and that, as a result, "[t]here is no finding that this impairment is non-severe to review," id.  Thus, in Plaintiff's view, the ALJ's "decision which is devoid of any mention of his headache condition cannot be supported by substantial evidence."  Id.

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. § 1508 (2008) (internal citation omitted); see also Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20 (1st Cir.

1986)(noting that "a claimant's statement ... 'shall not alone be conclusive evidence of disability'")(quoting 42 U.S.C. § 423(d)(5)); 20 C.F.R. § 404.1528(a) ("[A claimant's] statements alone are not enough to establish that there is a physical or mental impairment."); 20 C.F.R. § 404.1529(a) (2008) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged ....."); cf. 20 C.F.R. § 404.1528(c) (stating that "medically acceptable laboratory diagnostic techniques" include "chemical tests, electrophysio-logical studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests").

Here, there is no evidence that such tests were performed. The only medical evidence pertaining to Plaintiff's headaches consists of Plaintiff's complaints to Dr. Zayas, (R. at 193)("His new symptoms are headaches and neck stiffness."), and the doctor's subsequent notation of "cervicogenic headache," (id.), in the "Impressions" section of his office notes.  The first such reference appears on September 8, 2003, (id.), over two years after Plaintiff's alleged onset date, June 1, 2001, (R. at 12, 68).  Dr. Zayas carried this impression throughout the rest of his office notes, (R. at 187, 189, 191), and included it in a "Letter of Medical Necessity," (R. at 223), dated August 31, 2005, (id.).  The records of Plaintiff's primary care physician, Dr. Klufas, contain no references to headaches.  (R. at 156-82) In fact, it is twice noted that "[a] history of chronic or recurrent headaches ... [is] absent."[14]  (R. at 173, 179)

Plaintiff testified about his headaches at the September 6,

---

[14] Plaintiff denied suffering from headaches in his initial visit to Dr. Zayas on January 16, 2003, as well.  (R. at 201)

2005, hearing.  The transcript reflects that the ALJ
questioned him at length:

> Q     Okay.  Now, where is the pain located?
>
> ....
>
> A     Also, I have the problem the neck, also I have the
>       problem, my head.
>
> Q     Okay.  What problems are you having with your
>       head?
>
> A     The pain.
>
> Q     Is this a headache?
>
> A     Right.
>
> Q     How long have you been having headaches?
>
> A     Long time.
>
> Q     Have you reported that to your doctor?
>
> A     Yes.
>
> Q     Which doctor?
>
> A     Dr. Za[y]as and Dr. Klufas.[15]
>
> Q     Do you recall when you reported it to them?
>
> A     I not remember exactly because I told you that's a
>       long time I had this; don't remember exactly what
>       date I told.
>
> Q     Did they give you any medication for your head
>       pain?
>
> A     Yes, I take lot of, lot of medication.  Not
>       remember the name because it's lot of different
>       name, a lot of ... medication ....

---

[15] As noted previously, the record reflects that Plaintiff denied
chronic or recurring headaches to Dr. Klufas.  (R. at 173, 179)

24

```
....

Q     Okay.  When you take the medication, does it help
      your head?

A     A little bit.

....

Q     And how often do you take the medication during
      the day?

A     Sometime two times, sometime three times.
```

(R. at 26-29); see also Discussion Section I supra at 13.
Plaintiff also noted that dust bothered his head.  (R. at 37)

When asked why he could not work, however, Plaintiff stated
that "I have a lot of pain, the lower back pain, I have problems
to walk, I have problems to stand, I have problems to sit, it's
too much pain.  I cannot work."  (R. at 25)  Significantly, he
did not mention his headaches as among the reasons why he could
not work.  Nor did Plaintiff's headaches figure in the
assessments of Drs. Greenblatt and Klufas that Plaintiff was
disabled.  (R. at 150)("I now carry [Plaintiff] only with a
diagnosis of low back pain of undetermined etiology.  At present
the patient is disabled, probably completely ....");  (R. at 220)
("Patient is permanently disabled [secondary to] back pain.");
see also Dumas v. Shweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983)
("Although [the plaintiff] now complains of severe debilitating
headaches, headaches did not factor significantly into any of the
medical opinions concluding that [he] was unable to return to his
prior employment ....").  While Dr. Zayas' "Letter of Medical
Necessity," (R. at 223), lists cervicogenic headaches among the
conditions for which Plaintiff was being followed, (id.), the
doctor's statement that "[t]he patient has reached the point of
maximal medical improvement," (id.), does not indicate on which
diagnosis or diagnoses this conclusion is based or explain the

effect of Plaintiff's headaches on his ability to work, (id.).

It appears to the Court that Dr. Zayas' impression of cervicogenic headaches is based solely on Plaintiff's subjective complaints.  As noted previously, more is needed to establish disability.  See Avery, 797 F.2d at 20-21; 20 C.F.R. §§ 404.1508, 404.1528.  Accordingly, the Court concludes that the ALJ's implicit finding[16] that Plaintiff's headaches did not significantly affect his ability to perform work-related activities was reasonable, see Irlanda Ortiz, 955 F.2d at 969 (noting that court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion") (second alteration in original), and that Plaintiff has not met his burden of establishing that his headaches were a severe impairment, see Freeman v. Barnhart, 274 F.2d 606, 608 (1st Cir. 2001).  I therefore do not recommend remand for further consideration of Plaintiff's headaches.

## IV.  **Failure to ask VE if Testimony Consistent with DOT**

Plaintiff argues that "the ALJ did not fulfill her 'affirmative responsibility' under SSR 00-4p to inquire about the DOT," Plaintiff's Mem. at 18, and that, therefore, the ALJ's decision should be reversed and remanded, see id. (citing Freeman v. Barnhart, 274 F.3d at 609).  While it is true that the ALJ did

---

[16] While it would have been preferable for the ALJ to have explicitly found Plaintiff's headaches to be non-severe, given the lack of evidence in the record pertaining to the effect of Plaintiff's headaches on his ability to work, the Court finds any error in this regard to be harmless.  Cf. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)(noting that, although an ALJ's opinion may be vulnerable, "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); accord Dantran v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999) (noting that "remand ... is not essential if remand will amount to no more than an empty exercise").

not ask the VE whether his testimony conflicted with the DOT,[17]
the Court does not find that she had an affirmative
responsibility to do so in every case.

According to SSR 00-4p:

**When there is an apparent unresolved conflict** between VE
or VS[18] evidence and the DOT, the adjudicator must
elicit a reasonable explanation for the conflict before
relying on the VE or VS evidence to support a
determination or decision about whether the claimant is
disabled.  At the hearings level, as part of the
adjudicator's duty to fully develop the record, the
adjudicator will inquire, on the record, as to whether or
not there is such consistency.

SSR 00-4p, underline available at 2000 WL 1898704, at *2 (bold added).
The Ruling subsequently states:

When a VE or VS provides evidence about the requirements
of a job or occupation, the adjudicator has an
affirmative responsibility to ask about any possible
conflict between that VE or VS evidence and information
provided in the DOT.  In these situations, the
adjudicator will:
       Ask the VE or VS if the evidence he or she has
       provided conflicts with information provided in the
       DOT; and
       If the VE's or VS's evidence appears to conflict
       with the DOT, the adjudicator will obtain a
       reasonable explanation for the apparent conflict.

* * * *

When vocational evidence provided by a VE or VS is not
consistent with information in the DOT, the adjudicator
must resolve this conflict before relying on the VE or VS
evidence to support a determination or decision that the

---

[17] In her decision, the ALJ stated that she "accept[ed] the
vocational expert's credible testimony, as it is consistent with
Social Security Regulation 00-4p ...."  (R. at 19)

[18] A VS is a vocational specialist "who provide[s] evidence to
disability determination services ("DDS") adjudicators ...."  SSR 00-
4p, 2000 WL 1898704, at *1 (S.S.A.).

individual is or is not disabled.  The adjudicator will
explain in the determination or decision how he or she
resolved the conflict.

Id. at *4.

Some courts have interpreted these provisions as requiring
an ALJ to inquire only when a conflict between VE testimony and
the DOT has been identified, while others have concluded that the
ALJ is required to ask the VE whether any possible conflict
exists.  Compare Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir.
2002)(stating that SSR 00-4p "requires the ALJ to '[e]xplain [in
the] determination or decision how any conflict [with the
Dictionary] that has been identified was resolved.'")(quoting SSR
00-4p)(alterations in original), with Burns v. Barnhart, 312 F.3d
113, 127 (3rd Cir. 2002)(stating that SSR 00-4p "requires that
the ALJ ask the vocational expert whether any possible conflict
exists between the vocational expert's testimony and the DOT, and
that, if the testimony does appear to conflict with the DOT, to
elicit a reasonable explanation for the apparent conflict.")
(internal quotation marks omitted).  The First Circuit has not
ruled definitively that an ALJ must always ask the VE about any
possible conflicts or that a reviewing court must remand if an
ALJ fails to do so.  See, e.g., Freeman, 274 F.2d at 609
(remanding, in part, for compliance "with a new Social Security
Ruling clarifying the ALJ's duty to resolve any conflicts between
the vocational expert's testimony and the definitions in the
Dictionary of Occupational Titles," at the Commissioner's
request, without discussing the circumstances under which such
remand is required).

This Court finds the reasoning of the Court of Appeals for
the Seventh Circuit persuasive.  The Seventh Circuit stated that:

The ruling requires an explanation only if the
discrepancy was "identified"—that is, if the claimant (or
the ALJ on his behalf) noticed the conflict and asked for

substantiation.   Raising a discrepancy only after the hearing, as [the claimant's] lawyer did, is too late.  An ALJ is not obliged to reopen the record.  On the record as it stands—that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did.

Donahue v. Barnhart, 279 F.3d at 446-47; see also Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264, at *2 (D. Me. June 24, 2004)("[T]he mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the vocational expert's testimony were in fact consistent with the DOT.  Only an inconsistency between the testimony and the DOT that affects a plaintiff's claim could reasonably provide the basis for overturning the [C]ommissioner's decision ...."); Thompson v. Barnhart, 281 F.Supp.2d 770, 782-83 (E.D. Pa. 2003) (dismissing plaintiff's argument that ALJ failed to ask VE whether his testimony conflicted with DOT because "[t]his argument erroneously assumes that an ALJ must make a mechanical inquiry on this point any time a VE testifies.  Such is not the case" and holding that "the ALJ was under no duty to make such an inquiry"); Novak v. Barnhart, 180 F.Supp.2d 990, 1002 (E.D. Wis. 2001)(rejecting plaintiff's argument that ALJ was obligated to resolve conflict between VE testimony and DOT in part "because it is not clear that a conflict exists.  None was called to the ALJ's attention at the hearing ....").

In the instant case, no conflict was apparent.  In fact, as Defendant notes, see Defendant's Mem. at 29, even now Plaintiff points to no discrepancy between the VE's testimony and the DOT, arguing only that the ALJ failed to "inquire about the DOT," Plaintiff's Mem. at 18.  Thus, even assuming that the ALJ's failure to ask the VE about possible conflicts between his testimony and the DOT was error, the Court finds such error to be harmless.  See Doucette v. Barnhart, No. 04-89-P-S, 2004 WL

2862174, at *5 (D. Me. Dec. 13, 2004)("In any event, the failure to ask such a question is harmless if there is in fact no conflict that could affect the outcome of the plaintiff's claim.").  Accordingly, the Court does not recommend remand on this issue.

## V.    Failure to Provide Interpreter

In his reply memorandum, Plaintiff argues for the first time that the ALJ's failure to provide Plaintiff with an interpreter at the hearing was legal error.  See Plaintiff's Response at 3 (citing DiPaolo v. Barnhart, 01-CV-3123(JG), 2002 U.S. Dist. LEXIS 2707 (E.D.N.Y. Feb. 8, 2002)).  The Court's scheduling order issued on April 10, 2006 ("Order of 4/10/06"), however, provides in relevant part that Plaintiff may "file a brief reply memorandum **addressing issues raised in Defendant's memorandum and not fully discussed in his/her original memorandum**."  Order of 4/10/06 at 1-2 (bold added).  The Order of 4/10/06 clearly does not contemplate the raising of new issues in the reply memorandum.  The only references to Plaintiff's ability—or lack thereof—to speak English in his original memorandum are made in support of his argument that his waiver of counsel was invalid and that the ALJ's evaluation of Plaintiff's second MRI was factually erroneous.  See Plaintiff's Mem. at 8 ("This failure [to obtain a valid waiver] is particularly harmful because [Plaintiff] clearly did not speak English particularly well ... although [Plaintiff] could speak and understand some English, due to his language limitation he may not have understood the full implications of representation or his waiver of that right ....");  id. at 10 (noting that Plaintiff's "difficulty with the English language is even clear in his treatment notes"); see also id. at 14 (noting that Plaintiff "appeared at his hearing without representation or an interpreter" and was, therefore, "without an advocate who could point the ALJ to relevant evidence supporting

30

[his] contention, supported by his treating doctor, that he could not perform any competitive employment").

There is no indication in the foregoing that Plaintiff was additionally arguing that the ALJ should have provided an interpreter.  Accordingly, the Court views the issue of the ALJ's failure to provide an interpreter as waived.  <u>See</u> <u>United States v. Matchopatow</u>, 259 F.3d 847, 851 (7th Cir. 2001)("It is well recognized that arguments not raised in the proceeding until the reply brief are waived."); <u>accord</u> <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir. 1990)("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.")(alteration in original)(internal quotation marks omitted).

Moreover, in the Disability Report completed in conjunction with Plaintiff's applications, Plaintiff indicated that he could speak English, read English, and write more than his name in English.  (R. at 85)  The DDS interviewer(s) indicated no difficulty in Plaintiff's understanding, coherency, talking, or answering.  (R. at 83, 106)  In fact, one interviewer noted that Plaintiff "spoke English well but with a slight accent.  (R. at 83)  Although at his first visit to Samuel Greenblatt, M.D., Plaintiff brought his son to act as interpreter, (R. at 152), Dr Greenblatt subsequently reported that Plaintiff "came [to a follow-up appointment] without his son to act as a translator, but I think we communicated well enough."

Thus, even if the Court were to consider Plaintiff's belated argument that the ALJ's failure to provide Plaintiff with an interpreter at the hearing is reversible error, <u>see</u> Plaintiff's Response at 3, the Court would reject such argument.  Accordingly, the Court does not recommend remand on this issue.

## Conclusion

The ALJ's determination that Plaintiff was not disabled

within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.  I therefore recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse or Remand be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 12, 2008